UNITED STATES of America, Plaintiff,

v.

1.90 ACRES OF LAND, SUSSEX COUNTY, N. J., et al., Defendants.

Civ. No. 75–1519.

United States District Court,
D. New Jersey.

Sept. 2, 1981.

Robert J. Del Tufo, U.S. Atty., by Steven Crandall and James Cooper, Asst. U.S. Attys., Newark, N.J., for the United States.

Dolan & Dolan, by William T. Haggerty, Newton, N.J., for defendants Trustees of the Methodist Episcopal Church of Walpack Center and Delaware Valley United Methodist Church.

Gerald R. Bouchal, Newton, N.J., for defendants Freeling Haney, Charles Haney and Marie Sherwood Moore.

Bryan Cohen, Cherry Hill, N.J., for defendant Glenn T. Roe.

## OPINION

BIUNNO, District Judge.

■ This is a proceeding to try the title to lands taken by the United States by exercise of the power of eminent domain for the Tocks Island Recreation Project. Jurisdiction is by virtue of 28 U.S.C. § 1345 and § 1358. Since the issue to be tried is an issue other than that of "just compensation," trial is by the court without a jury. See Rule 71A(h), and *U.S. v. Reynolds*, 397 U.S. 14, 90 S.Ct. 803, 25 L.Ed.2d 12 (1970).

The subject lands, comprising 46/100 of an acre, was conveyed by deed dated June 24, 1871 and recorded in Deed Book P–6 for Sussex County at p. 185 et seq. The grantors were Jacob S. Roe and Sarah J. Roe, of Walpack Township. The grantees were seven named individuals described as "Trustees of the Methodist Episcopal Church of Walpack Center". Both the granting and habendum clauses are to the grantees "and to their lawful successors in office forever", thus conveying a fee simple estate, see N.J. S.A. 46:3–13.

■ After a metes and bounds description, the deed went on to provide:

"In trust nevertheless that said premises shall be used kept and maintained and disposed as a place of Divine worship for the use of the ministry and membership of the Methodist Episcopal Church in the United States of America."

This language establishes that the conveyance of the fee title was a trust. *In re Greenbrook, etc., Co.*, 103 N.J.Eq. 60, 142 A. 308 (Ch.1928).

The deed also went on to provide:

" * * * but it is hereby expressly understood and this conveyance is so meant and intended to be that in case at any time the said Church shall be removed and the premises shall be abandoned by the said party of the second part or their successors in office shall be no further used by them or any of them or their successors or decedents as a house or place of Religious Worship that then and in that case the estate right title and property herein conveyed by the party of the first part shall revert to the said Jacob S. Roe, his heirs and assigns forever."

Some of the heirs of Jacob S. Roe (Haney, Moore and Roe) asserted claims here on two theories. One was that the taking by the United States activated the reversion, and the other was that the church trustees had abandoned the lands for trust purposes before the formal taking.

The evidence showed that there was no dispute in respect to value. The church trustees negotiated with the United States and agreed on a value of $3,000 for the land and $59,000 for the church structure. No one disputed these values. It was also not in dispute that the church structure had been built with church funds, and that its agreed value of $59,000 was not subject to the reverter.

■ The evidence showed that the church continued to be used for church purposes, and was never voluntarily abandoned. So far as the taking by the government is concerned, the law is well settled that such an involuntary event does not activate the reverter clause.

Instead, the court will treat the $3,000 proceeds for the land in trust as being the character of real estate, and apply the doctrine of *cy pres* to assure that these proceeds are subjected to the same trust as the land was. See, especially, *State v. Cooper*, 24 N.J. 261, 131 A.2d 756 (1957). While that case involved dedication of an easement for a park, with the owner retaining the fee, rather than a conveyance in trust with a reverter clause, the opinion makes clear that the treatment is the same in the usual case where there is a taking of the entire fee and of all interests in it. The trust can easily be continued, and any occasion to activate the reverter clause avoided, by application of the *cy pres* doctrine.

In this case the evidence shows that the Delaware Valley United Methodist Church is the successor by merger of the Methodist Episcopal Church of Walpack Center, whose trustees were the named trustees in the deed. The deed itself, in the granting and habendum clauses, contemplates "successors in office" to the named trustee individuals. Thus, the act of merger, of itself, gives rise to no occasion to activate a reversion. The new trustees simply replace the former ones.

Since the taking was involuntary, no "abandonment" of the trust use occurred. The taking was an intervening event over which the trustees had no control. The principles are well established. See *Wilbur v. Owens*, 2 N.J. 167, at 174, 65 A.2d 843 (1949) (charitable trust); *In re Fisler*, 133 N.J.Eq. 421, 30 A.2d 894 (E & A 1943) (probable intent of settlor to have the trust carried out as near as may be); *Howard Savings, Inst. v. Peep*, 34 N.J. 494, 170 A.2d 39 (1961) (preservation of trust purposes); *Merriam v. Dunham*, 62 N.J.Eq. 567, 50 A. 235 (Ch.1901) (proceeds of sale of infant's lands as real estate); *Pomeroy*, "Equity Jurisprudence", (5th Ed) § 1167, footnote 14 (money paid into court retains character as real estate); IV *Scott on Trusts*, § 399.2 (trusts do not fail where there is a general intent to devote the settled trust property to charitable uses).

Those heirs of Jacob Roe who appeared in the proceedings, as well as those who were served but did not appear, have no interest in the $59,000 compensation for the taking of the church buildings since that property belonged always to the church and was not what was conveyed by the trust deed. That sum is not subject to the reverter clause.

The $3,000 compensation for the land deeded by Jacob S. Roe, et ux is subject to the trust established by the Roe deed, and is to be held by the successor by merger for those purposes. So far as specific application of those funds may hereafter be a matter of dispute, those questions can be and should be resolved by the Superior Court of New Jersey and this court does not retain jurisdiction.